# Supreme Court of Texas

No. 25-0674

In re Greg Abbott,

*Relator*

*~ consolidated with ~*

No. 25-0687

In re State of Texas,

*Relator*

On Petitions for Writ of Quo Warranto

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE SULLIVAN filed a concurring opinion.

Justice Hawkins did not participate in the decision.

It should always be remembered that the separation of the great powers of government into different and distinctive departments, each independent in its own sphere and protected by constitutional limitations that neither can transcend but which all must respect, is the distinctive feature of our system . . . . The preservation of these powers in their full integrity and independence is a matter of common concern, for upon the freedom of their exercise

depend alike public repose and private security, and neither will long endure if their abridgment be permitted or encouraged. While the courts will not and should not hesitate to discharge their responsible functions in all cases that fall within the judicial authority, to them peculiarly is committed the duty of emphasizing the obligation that rests upon each department of the government to observe its rightful limits, and for this reason it is the more incumbent upon them not to exceed their own.

*City of Dallas v. Dall. Consol. Elec. St. Ry.*, 148 S.W. 292, 294 (Tex. 1912).

For a brief time in the summer of 2025, the Texas House of Representatives lacked the two-thirds quorum required to do business. *See* TEX. CONST. art. III, § 10. Several dozen House members left the state, on August 3, for the express purpose of preventing the House from functioning. They voluntarily returned two weeks later, and a quorum was achieved on August 18. The redistricting legislation precipitating this "quorum break" passed the House shortly afterward. The Governor signed it into law on August 29. Congressional elections under the new district lines are well underway.

Days after the absent House members left the state, the Governor and the Attorney General each petitioned this Court for writs of quo warranto removing from office certain of the absent members. The petitions contend that by purposefully fleeing the state to prevent the House from doing business, the absent members abandoned or forfeited their offices. The accused members respond, among other arguments, that "quorum-breaking" is a legitimate legislative tactic, not an abandonment or forfeiture of office. Although the legislative stalemate giving rise to the dispute was long ago resolved, the petitioners continue

2

to urge that removal from office is the necessary consequence of the absent members' actions. The respondents continue to advance a variety of responses, both jurisdictional and substantive.

The potential constitutional magnitude of this litigation is self-evident. Executive officers ask judicial officers to remove legislative officers from their seats. At stake are fundamental questions about the allocation of power between and within the branches of Texas government, all three of which are commanded by our Constitution not to "exercise any power properly attached to either of the others, except in the instances . . . expressly permitted [by the Constitution]." *Id.* art. II, § 1. Faced with any such question, our first instinct should be to consult the Texas Constitution, which is by no means silent on the topic:

> Two-thirds of each House shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members, in such manner and under such penalties as each House may provide.

*Id.* art. III, § 10.

With these words, the nineteenth-century framers of the Texas Constitution anticipated the situation in which our state found itself in 2025. They understood that in a legislature with a two-thirds quorum rule, the power "to compel the attendance of absent members" can be the difference between a functioning government and debilitating gridlock. *Id.* They entrusted the power to compel legislative attendance not to the judicial branch but to the present members of each House, to be wielded "in such manner and under such penalties as each House may provide." *Id.* In a similar vein, the framers empowered not the Supreme Court but "[e]ach House . . . with the consent of two-thirds [to] expel a

3

member." *Id*. art. III, § 11. They also made "[e]ach House . . . the judge of the qualifications . . . of its own members." *Id*. art. III, § 8.

During the two weeks in which a quorum was lacking in August of 2025, the present members of the House wielded their constitutional power to compel attendance in several ways, including by withholding financial resources from absent members. The modest measures employed barely scratched the surface of the House's broad coercive authority to compel attendance "in such manner and under such penalties as each House may provide." *Id*. art. III, § 10. They nonetheless proved effective. Other actors in the political process, including the Governor—whose constitutional interest in legislative affairs is naturally heightened when he has called the legislature into special session—also sought by various means to pressure the absent members to return. In the end, a quorum was restored in two weeks' time, without judicial intervention, by the interplay of political and practical forces.

"Courts have uniformly recognized that it is not their role to resolve disputes between the other two branches that those branches can resolve for themselves." *In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021) (collecting cases). The courts' institutional "reluctance . . . to involve themselves in contests of factional political power," a reluctance we reiterate and reinforce today, is a check on the judicial power "of ancient standing," not an optional preference we are at liberty to discard. *Baker v. Carr*, 369 U.S. 186, 288 n.21 (1962) (Frankfurter, J., dissenting) (citing The Duke of York's Claim to the Crown (1460), 5 Rotuli Parl. 375, *reprinted in* EUGENE WAMBAUGH, A SELECTION OF

4

CASES ON CONSTITUTIONAL LAW 1 (1915)).  Nevertheless, once again "we are asked to settle a dispute between coequal branches of our Government, each of which has resources available to protect and assert its interests."  *Turner*, 627 S.W.3d at 661 (quoting *Goldwater v. Carter*, 444 U.S. 996, 1004 (1979) (Rehnquist, J., concurring)).  And once again, as has so often been the case in our state's history, the robust political dynamics envisioned by our Constitution proved well suited to resolve a contentious political matter on their own, without interference from the courts.

Whatever wrong may have been committed by the absent House members, the Texas Constitution's internal political remedies, none of which involve the judicial branch, were sufficient to the task of restoring the House's ability to do business.  Should those remedies unexpectedly prove inadequate in a future case, we might have occasion to consider whether any judicial remedy could ever be available in circumstances such as these.  We resolve neither that question nor any other today.  The House's temporary inability to function having been speedily resolved by the political mechanisms envisioned by our Constitution, we decline to exercise discretionary jurisdiction over the petitions for writ of quo warranto, which are denied.

James D. Blacklock
Chief Justice

**OPINION DELIVERED:** May 15, 2026